743 So.2d 1064 (1999)
James C. WALDRON, Appellant,
v.
Saundra WALDRON, Appellee.
No. 98-CA-00659-COA.
Court of Appeals of Mississippi.
June 22, 1999.
Carolyn Buttles Mills, Jerry L. Mills, Ridgeland, Attorneys for Appellant.
Robin L. Roberts, Hattiesburg, Attorney for Appellee.
BEFORE SOUTHWICK, P.J., COLEMAN, AND THOMAS, JJ.
SOUTHWICK, P.J., for the Court:
¶ 1. James Waldron appeals from an order of the Chancery Court of Lamar County denying his motion for modification of rehabilitative periodic alimony. Waldron argues that his wife's remarriage terminated his obligation to pay rehabilitative periodic alimony. We disagree and affirm.

FACTS
¶ 2. James and Saundra Waldron were married on June 12, 1989. On November 7, 1994, Mrs. Waldron filed a complaint for divorce on several grounds, including habitual cruel and inhuman treatment. A divorce on those grounds was granted on March 7, 1997. In his order, the chancellor awarded Mrs. Waldron rehabilitative periodic alimony for a period of ten months in the amount of $1500 beginning on April 1, 1997, and ending on January 1, 1998.
¶ 3. Sometime prior to January 1, 1998, Mrs. Waldron remarried. Mr. Waldron filed a motion to terminate the payment of rehabilitative periodic alimony. He alleged that remarriage ended that obligation *1065 as a matter of law. The chancellor denied the motion on April 1, 1998, holding that he never intended the rehabilitative periodic alimony payments to end upon remarriage.

DISCUSSION
Effect of remarriage on right to receive rehabilitative periodic alimony
¶ 4. Mr. Waldron does not contest the validity of the initial award, but only its continuation after his former wife's remarriage. The supreme court has defined rehabilitative periodic alimony as "an equitable mechanism which allows a party needing assistance to become self-supporting without becoming destitute in the interim." Hubbard v. Hubbard, 656 So.2d 124, 130 (Miss.1995). "`Rehabilitative periodic alimony' is modifiable as well [as is periodic alimony], but is for a fixed period of time vesting as it accrues." Id. at 130.
¶ 5. Rehabilitative alimony should not be confused with periodic alimony. An award of periodic alimony derives from "the duty of the husband to support his wife ... in the manner to which she has become accustomed, to the extent of his ability to pay." Watson v. Watson, 724 So.2d 350, 354 (Miss.1998). Periodic alimony terminates "upon the remarriage of the receiving spouse or the death of the paying spouse." Id. at 129. Moreover, periodic alimony cannot be modified or terminated unless a party can demonstrate a material change in circumstances. Id. Further, unlike rehabilitative periodic alimony, periodic alimony cannot have a fixed termination date. Cleveland v. Cleveland, 600 So.2d 193, 196 (Miss.1992).
¶ 6. Mr. Waldron relies heavily on the fact that rehabilitative periodic alimony is subject to modification. However, its susceptibility to requests for modification does not answer whether it automatically terminates upon the remarriage of the recipient spouse. We are pointed to a precedent of this court in which we explained the characteristics of rehabilitative alimony.
The supreme court has recognized three types of alimony: periodic, rehabilitative periodic, and lump sum. Hubbard v. Hubbard, 656 So.2d 124, 129-30 (Miss. 1995). What was awarded here was rehabilitative periodic alimony. It is subject to modification, terminates upon remarriage of the recipient or the death of either former spouse, and has a time limit set by the court. It is awarded to assist the recipient "to become self-supporting without becoming destitute in the interim." Id.

Bridges v. McCracken, 724 So.2d 1086, 1087 (Miss.App.1998) (emphasis added). The result in Bridges did not turn on the issue that we face here. The Court, through this same opinion author, relied on Hubbard for its descriptions. We have quoted Hubbard already, and Hubbard does not say that rehabilitative alimony terminates upon remarriage. Consequently, we find that automatic termination upon the recipient spouse's remarriage is not part of the current definition of rehabilitative periodic alimony. Bridges's statement to the contrary is disapproved. Whether remarriage is in itself a sufficient change in circumstances to permit a chancellor to terminate even when the original decree was silent is not our issue and may be deferred until another day. On the other hand, we find nothing that would prevent a chancellor from providing in the original decree for termination if remarriage occurred. In one recent case, the divorce decree had such a provision. Turnley v. Turnley, 726 So.2d 1258, 1261 (Miss.App.1998).
¶ 7. It is on that last basis that Mr. Waldron next argues that the language used for the original award required termination upon remarriage and not to enforce it was an improper modification. The chancellor stated that "the Court awards, and James is ordered to pay, rehabilitative periodic alimony to Saundra in the amount of $1500 per month payable at the beginning *1066 of each month beginning April 1, 1997 and continuing for the next 9 months with the last scheduled payment to be on January 1, 1998." The chancellor stated that the original order "was not intended to terminate solely upon the remarriage of Mrs. Waldron." The chancellor expressed that the premature termination of the award would "frustrate the purpose of the award" because the obligation was intended to be vested. Further, if the chancellor had intended for the payments to cease upon the former wife's remarriage, he could have placed words to that effect in the decree.
¶ 8. The chancellor specifically used the words "rehabilitative periodic alimony" and not "periodic alimony" in the original decree. Any ambiguity about its continuation beyond Mrs. Waldron's remarriage was resolved on motion for termination. We see no error in the chancellor's resolution of these issues.
¶ 9. THE JUDGMENT OF THE CHANCERY COURT OF LAMAR COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.